KATZ & BESTHOFF, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4707.     Promulgated December 8, 1926.

Salaries deducted by petitioner in its 1918 return for services rendered by its officers during the year *held* to be reasonable.

*Isom J. Guillory, Esq.,* and *E. Barrett Prettyman, Esq.,* for the petitioner.

*W. Frank Gibbs, Esq.,* for the respondent.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income and profits tax for the year 1918, in the amount of $10,357.32, of which the petitioner admits $469.32, leaving in issue $9,888. The deficiency results from the action of the respondent in reducing the amount deducted by the petitioner as salaries for services rendered to it by its officers.

### FINDINGS OF FACT.

The petitioner is a Louisiana corporation with its principal office in New Orleans. It was organized in 1905 with a capital stock of $29,000, of which S. J. Besthoff, secretary and treasurer, and Gustav Katz, president, each owned 48 per cent.

Until 1910 the petitioner operated one drug store, which was located in the downtown section of New Orleans. In 1910 a second store was opened in the same section of the city and a block away from the first store. Other stores were subsequently opened and operated with success. During the year involved in this proceeding, the petitioner operated two retail drug stores and manufactured from 150 to 200 proprietary medicines, perfumes and toilet goods which it sold.

From 1905, when the business began, Besthoff and Katz, both of whom were registered pharmacists of several years' experience, were actively engaged in the conduct of the business, including the development of formulae for the manufacture of proprietary medicines, toilet goods and perfumes. In 1918 the petitioner employed approximately 150 persons.

During 1918, Katz was in charge of the first store. His duties consisted of looking after the manufacture of goods, making pur-

chases, taking care of the office, the finances and the books of account, originating and devising formulae, making up new preparations and marketing and selling them. He also looked over the charge prescriptions every day to see that they had been properly priced. Occasionally he waited on customers.

During 1918, Besthoff was in charge of the second store. In addition to his duties there, he looked after the advertising for the two stores and the hiring of help for both places, and assisted Katz in looking after the finances of the corporation, making purchases, and developing formulae for use in the petitioner's business.

The duties of Katz and Besthoff during 1918 required them to be at the respective stores during business hours each week-day, a portion of the day on Sundays, and until midnight on alternate nights during the week. The night Katz was on duty Besthoff was off, and vice versa.

At times during 1918, on account of the influenza epidemic, the respective stores had to operate with about one-half the usual number of employees, even though the epidemic furnished the stores with increased business.

On account of the difficulty of obtaining many drugs needed in the business and because of the frequent advance in prices the operation of the business was more difficult and more caution was required in 1918 than in preceding or subsequent years.

It was the practice of the corporation to increase the salaries of its officers as their duties and responsibilities grew heavier. In 1906 the salaries of Katz and Besthoff were $3,000 each per year. In 1908 they were increased to $4,200, at which figure they remained until 1911, when they were increased to $6,000 a year. In 1912 they were raised to $7,800. Increases were made in 1913 and 1916 to $12,000 and $15,000, respectively. At a meeting of the board of directors on February 8, 1918, the salaries were increased from $15,000 to $18,000 a year. At another meeting of the board of directors on December 30, 1918, the salaries were increased from $18,000 to $24,000, to be retroactive to January 1, 1918. This increase had been decided upon between Katz and Besthoff during the fall of 1918. For years subsequent to 1918 their salaries have been $30,000 each per year.

The petitioner in its return for 1918 claimed a deduction of $48,000, representing salaries of $24,000 paid to Katz and Besthoff, respectively, for services rendered by them. In an audit of the return the respondent reduced the amount deducted by the petitioner from $48,000 to $36,000, upon the ground that $36,000 was reasonable compensation for the services rendered.

The net income before and after deducting officers' compensation, the capital and surplus, and the percentage of the amount deducted by the petitioner for officers' salaries to net income before such deduction for the years 1917 through 1920 were as follows:

| Year. | Total sales. | Officers' compensation. | Net income before deducting officers' compensation. | Net income after deducting officers' compensation. | Capital and surplus. |
|---|---|---|---|---|---|
| 1917, 2 stores | $463,123 | $50,000 | $60,159.00 | $30,159 | $138,818.76 |
| 1918, 2 stores | 575,812 | 48,000 | 94,045.00 | 46,045 | 176,141.57 |
| 1919, 2 stores | 767,761 | 60,000 | 140,874.00 | 80,874 | 206,723.21 |
| 1920, 3 stores | 868,394 | 60,000 | 83,391.00 | 23,391 | 227,231.14 |

| Year. | Per cent of officers' compensation to total sales. | Per cent of officers' compensation to net income before deducting salaries. | Per cent of net income to capital stock after deducting officers' salaries. | Per cent of net income to capital and surplus after deducting officers' salaries. |
|---|---|---|---|---|
| 1917, 2 stores | 6.4 | 49.9 | 103.9 | 21.8 |
| 1918, 2 stores | 8.3 | 52.1 | 151.9 | 25.0 |
| 1919, 2 stores | 7.8 | 42.5 | 278.8 | 39.1 |
| 1920, 3 stores | 6.9 | 71.9 | 80.6 | 10.2 |

ere declared in 1918.

s were opened by others and began operation in he petitioner's first store between the date peti- s opened and 1918, five of which had gone out of year 1918.

leducted by the petitioner is a reasonable allowance on for services rendered to it by its officers.

> *Judgment will be entered after 15 days'
> notice, under Rule 50.*